DARREN P. TOLLIVER,

     Plaintiff,

v.                                   Case No. 19-cv-0727

MARINE CREDIT UNION,

     Defendant.

## DEFENDANT'S ANSWER AND STATEMENT OF DEFENSES

## INTRODUCTION

1.     This is an action under Title VII of the Civil Rights Act of 1964 as amended, and Title I of the Civil Rights Act of 1991 ("Title VII") to correct unlawful employment practices on the basis of race by Defendant and to provide appropriate relief to a former employee. As alleged with greater particularity below, defendant has engaged in unlawful discrimination by terminating Tolliver on the basis of his race and ending his employment at Marine Credit on the basis of his race.

**ANSWER**: Defendant admits that Plaintiff seeks to assert claims under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991. Defendant denies those claims have any merit. Defendant denies the remaining allegations of Paragraph 1 of the Complaint.

2.     This also is civil action under 42 U.S.C. § 1981.

**ANSWER:** Defendant admits that Plaintiff seeks to assert claims under 42 U.S.C. § 1981. Defendant denies those claims have any merit. Defendant denies the remaining allegations of Paragraph 2 of the Complaint.

3.     Finally, this is an action under Wisconsin state law, including for violations of Wisconsin's Fair Employment laws, Wis. Stat. §§ 111.31 *et seq.*

**ANSWER**:  Defendant admits that Plaintiff seeks to assert claims under Wis. Stat. §§ 111.31 *et seq.*  Defendant denies those claims have any merit.  Defendant denies the remaining allegations of Paragraph 3 of the Complaint.

## JURISDICTION

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f) (1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981 and 1981a.

**ANSWER**:  Defendant avers that the allegations in Paragraph 4 of the Complaint call for a legal conclusion that require neither an admission nor a denial and, on that basis, neither admits nor denies those allegations.

5.      Tolliver has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 by timely filing a charge of discrimination with the Wisconsin Equal Rights Division on July 13, 2018.

**ANSWER**:  Defendant admits that Plaintiff filed a Charge of Discrimination with the Wisconsin Equal Rights Division on July 13, 2018.  Defendant denies the remaining allegations in Paragraph 5 of the Complaint.

6.      The EEOC provided Tolliver a Notice of a Right to Sue letter dated March 1, 2019. Attached hereto and incorporated herein as **Exhibit A** is a true and correct copy of Tolliver's Right to Sue letter that he received from the EEOC.

**ANSWER**:  Defendant admits that the EEOC mailed a Notice of Right to Sue (Issued On Request) to Plaintiff on March 1, 2019, a copy of which was attached as Exhibit A to Plaintiff's

Complaint. Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff received the Notice of Right to Sue on March 1, 2019, and therefore denies same.

7. This Court also has supplemental jurisdiction over all other claims under 28 U.S.C. §1367 because they form part of the same case or controversy as the aforementioned claims.

**ANSWER**: Defendant avers that the allegations in Paragraph 7 of the Complaint call for a legal conclusion that require neither an admission nor a denial and, on that basis, neither admits nor denies those allegations.

8. Venue in this judicial district is proper by virtue of 28 U.S.C. §1391 in that many of the alleged acts were committed in the Eastern District of Wisconsin. Tolliver worked for Defendant in the Eastern District of Wisconsin. Additionally, the Defendant does business in the Eastern District of Wisconsin.

**ANSWER**: Defendant admits that it does business and that Plaintiff worked in the Eastern District of Wisconsin. Defendant avers that the remaining allegations in Paragraph 8 of the Complaint call for a legal conclusion that require neither an admission nor a denial and, on that basis, neither admits nor denies those allegations.

## PARTIES

9. Tolliver is an adult male of African-American descent residing at 117 E. Garfield Avenue, Waukesha, Wisconsin 53189.

**ANSWER**: Defendant admits that Plaintiff is an adult male of African-American descent. Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff lives at the alleged address and therefore denies same.

10. Defendant Marine Credit, at all material times, is a Wisconsin financial institution located in the State of Wisconsin with a principal place of business at 811 Monitor

3

Street, La Crosse, Wisconsin 54603.

**ANSWER**:  Defendant admits the allegations in Paragraph 10 of the Complaint.

**FACTS**

11.     Tolliver was terminated on November 10, 2017.

**ANSWER**:  Defendant admits the allegations in Paragraph 11 of the Complaint.

12.     At the time of his termination, Tolliver was employed as a vice-president and manager.

**ANSWER**:  Defendant admits the allegations in Paragraph 12 of the Complaint.

13.     Tolliver's termination were [sic] a pretext for Tolliver complaining about his treatment compared to his peers.

**ANSWER**:  Defendant denies the allegations in Paragraph 13 of the Complaint.

14.     During the week of September 25, 2017, Tolliver was asked to spend the week in La Crosse, Wisconsin to call on delinquent accounts. Tolliver was not employed by Marine Credit in La Crosse but asked to travel there to assist with the Bank's collections issue in that area. Because of the loan delinquency problems, the Bank had experienced, many branch managers were visiting La Crosse to make phone calls for a week to attempt to collect on delinquent accounts.

**ANSWER**:  Defendant denies that Defendant was not employed by Marine Credit Union in La Crosse, as Defendant is headquartered in La Crosse and Plaintiff was regularly assigned to travel there as needed.  Defendant also denies that Plaintiff was asked to travel to La Crosse simply to assist with Bank collections in September 2017, as he was also tasked with enhancing his collection skills to aide his own district's collections.  Defendant admits the remaining allegations in Paragraph 14 of the Complaint.

4

15.     As of the date of his recent termination, Tolliver was the only district manager required to do this menial task. In an email when he asked his supervisor the purpose of going to La Crosse during this time, the supervisor indicated the purpose would be training and education program. When Tolliver talked to him a few days before Tolliver was to attend this supposed training and education program, he then told Tolliver that he instead would be calling on delinquent accounts just as other branch managers have done before.

**ANSWER**:   Defendant admits that part of the purpose for having Plaintiff work on collections in La Crosse was to show him proper procedures so he could coach his own team. Defendant denies the remaining allegations in Paragraph 15 of the Complaint.

16.     It was very demoralizing to Tolliver for him to be the only district manager to be treated differently in this matter. Not only was this embarrassing as no one at his level has had to do this, it also caused Tolliver's team to be at a disadvantage. During this same week, two new lenders started their careers at the branch that week and Tolliver was not able to properly train and onboard them because Tolliver was busy calling delinquent accounts against his will in La Crosse.

**ANSWER**:   Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff's performance of assigned duties was demoralizing and/or embarrassing to him and therefore denies same.  Defendant denies the remaining allegations in Paragraph 16 of the Complaint.

17.     In March of 2017, Tolliver was told that his lending authority as a district manager was to be suspended. Tolliver was not given a single, specific reason in writing or an example as to why this was happening. Tolliver was told very general comments that Shawn Hanson, the president of Marine Credit, did not like the lending decisions Tolliver had made without giving him any specific examples of what Tolliver was doing wrong.

**ANSWER**:  Defendant admits that Plaintiff's lending authority was suspended in March 2017.  Defendant denies the remaining allegations in Paragraph 17 of the Complaint.

18.     Subsequently, in June of 2017, Tolliver had his consumer lending authority reinstated and was told that he would have his mortgage lending authority reinstated in August of 2017.

**ANSWER**:  Defendant admits Plaintiff's consumer lending authority was reinstated in June 2017.  Defendant denies the remaining allegations in Paragraph 18 of the Complaint, as Plaintiff's mortgage lending authority was reinstated along with his consumer lending authority.

19.     In August 2017, Troy Moen, Vice President of Operations, did a thorough review into Tolliver's recent lending decisions. He found that all 16 consumer loans that Tolliver approved were deemed a good loan decision. Yet Tolliver's mortgage lending authority was not reinstated as promised.

**ANSWER**:  Defendant admits that some of Plaintiff's lending decisions were reviewed in approximately August of 2017.  Defendant denies the remaining allegations in Paragraph 19 of the Complaint.

20.     Prior to his termination, Tolliver spoke with his former manager, Mark Barker, to inquire about the lending decisions that Tolliver was making. At that time, it was well past the stated August 2017 target for Marine Credit to reinstate Tolliver's mortgage lending authority.

**ANSWER**:  Defendant admits that Plaintiff spoke with Mark Barker about lending decisions before he was terminated.  Defendant denies the remaining allegations in Paragraph 20 of the Complaint

21.     From late March 2017, when his mortgage lending was suspended, until the time of his termination, Tolliver was instructed to send all mortgage loans to Mark Barker for approval

if he supported the issuance of the loan. During this time, there was not one single loan that Tolliver recommended for approval that Mark Barker said was a bad loan. The comments Mark Barker may have had regarding the loan had nothing to do with the loan being a quality loan decision, but rather, were application tweaks due to a clerical error from the mortgage representative who took the application, or if Barker wanted more clarity on a topic.

**ANSWER**: Defendant admits that Plaintiff was instructed to send mortgage loans for approval. Defendant denies the remaining allegations in Paragraph 21 of the Complaint.

22. Mark Barker said Tolliver's lending decisions were good but because of the delinquency issues in the Milwaukee Area (including a different district in Milwaukee that had much worse numbers in terms of delinquency and was hurting Barker's district), Barker could not advocate for Tolliver to get his mortgage lending authority back at that time.

**ANSWER**: Defendant denies the allegations in Paragraph 22 of the Complaint.

23. During this same meeting Tolliver was given a written warning that stated that Tolliver was tardy on performing some electronic classes, in delivering a monthly performance review to his direct reports and in giving his monthly performance review comments to his manager on time. Tolliver was treated very differently and was reprimanded because of these tardiness issues when others were not. Marine Credit Union had a culture of not taking the monthly performance reviews seriously. At the time of this subsequent meeting, Tolliver was with the company for a full year and had never had an in-person monthly performance review given to me. Most commonly, his manager prior to Mark Barker (Tim Cruciani who left in February of 2017) would email me the same day the monthly performance review was due and said call him if Tolliver had any questions. There was not a culture of using that tool for managers to truly develop employees.

7

**ANSWER**: Defendant admits Plaintiff was given a written warning on approximately March 29, 2017. Defendant denies the remaining allegations in Paragraph 23 of the Complaint.

24.     Tolliver also treated differently compared to his peers. In May 2016, a direct manager who was managing the 27th Street location in which Tolliver was working was relocated, which effectively evolved Tolliver's position into both Branch Manager and District Manager. However, Tolliver did not receive increased compensation or training for this additional role. When Tolliver began falling behind on work-related items, he started composing a "time audit" so he could show his manager (Mark Barker) how Tolliver was struggling to keep up trying to perform two very different roles that both are full time (District Manager and Branch Manager).

**ANSWER**: Defendant admits that Plaintiff acted as a district manager and a branch manager for periods of time during his employment. Defendant lacks knowledge or information sufficient to form a belief as to when Plaintiff prepared a time audit and therefore denies those allegations. Defendant denies the remaining allegations in Paragraph 24 of the Complaint.

25.     When Tolliver reached out multiple times for help, Tolliver was told statements like, "I can't hold your hand" or that Tolliver was "making excuses," and how other district managers were in a similar situation performing better than Tolliver was. This is an untrue statement as the only other district manager who was short-staffed branch managers was an individual who was employed by Marine Credit for 10 years and had his own office in Fond Du Lac where he never had to worry about members walking in and interrupting him. He did not have to take member payments or do many tasks that Tolliver was doing on a regular basis. For many weeks Tolliver ran a branch with just himself and one other lender for a branch that had significant member walk in for transactions and other member service issues that prevented Tolliver from doing his job successfully.

**ANSWER**:  Defendant denies the allegations in Paragraph 25 of the Complaint.

26.     Tolliver also was treated differently due to certain quality and service scores. At Marine Credit, quality and service scores are part of the monthly performance review that Marine Credit Union managers are supposed to deliver to the direct reports monthly. The quality score is relatively objective and takes into account quantitative factors such as loan errors or deposit errors made in one's district in that particular month. The service score, however, is very subjective. The only quantifiable item that is related for service score is "president inbox complaints," which occurs when someone goes to the Marine Credit website and makes a complaint that rises up to the president's office. In Tolliver's 18 months of service at Marine Credit, he received only one president inbox complaint that was not directed directly at a staff member in his district but more of the frustrating process of changing the due date on a loan after it already was set. Despite only one such complaint, for the last six months prior to his termination, Tolliver received less than satisfactory marks on his personal score card in the quality and service areas. Tolliver is aware of other district managers who are not African-American who have had multiple president inbox complaints and their quality and service scores were not impacted during this time as Tolliver's was impacted.

**ANSWER**:  Defendant denies the allegations in Paragraph 26 of the Complaint.

27.     None of the above-referenced incidents or situations happened to his white counterparts with the exception of calling on delinquent accounts.

**ANSWER**:  Defendant denies the allegations in Paragraph 27 of the Complaint.

28.     Not only was Tolliver treated poorly compared to his peers, Tolliver was treated poorly compared to direct reports. It was extremely embarrassing to have his lending authority removed, receive unjustified low "service" scores was unjustified, and be assigned the task of

calling on delinquent accounts that were not under his direct control or purview.

**ANSWER**:  Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff was embarrassed and therefore denies same.  Defendant denies the remaining allegations in Paragraph 28 of the Complaint.

29.     Interestingly, during his employment, Tolliver was the only person of color of anyone in a leadership capacity within the entire company. Not just the only black vice president but the only black manager (there was another black manager employed by Marine Credit Union at the Fond du Lac location, but he was demoted) within the entire company, or less than one percent of the company.

**ANSWER**:  Defendant denies the allegations in Paragraph 29 of the Complaint.

30.     At all material times, Tolliver performed his work duties in accordance with the reasonable expectations of Marine Credit.

**ANSWER**:  Defendant denies the allegations in Paragraph 30 of the Complaint.

## COUNT I – DISCRIMINATION ON THE BASIS OF RACE

31.     Tolliver realleges and incorporate by reference the above paragraphs as if they were set forth herein.

**ANSWER**:  Defendant reasserts and incorporates by reference its responses to all previous paragraphs set forth above as though restated herein.

32.     The decision to terminate Tolliver was based on his race, in violation of Title VII and 42 U.S.C. §§ 1981.

**ANSWER**:  Defendant denies the allegations in Paragraph 32 of the Complaint.

33.     Marine Credit's conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) and 42 U.S.C. § 1981.

**ANSWER**:  Defendant denies the allegations in Paragraph 33 of the Complaint.

34.     Tolliver has suffered great physical and emotional pain and suffering, lost wages and other employment benefits, attorney's fees and costs, and other damages that he will establish at trial.

**ANSWER**:  Defendant denies the allegations in Paragraph 34 of the Complaint.

### COUNT II – VIOLATION OF WISCONSIN FAIR EMPLOYMENT LAWS
### (Wis. Stat. §§ 111.31 *et seq.*).

35.     Tolliver realleges and incorporate by reference the above paragraphs.

**ANSWER**:  Defendant reasserts and incorporates by reference its responses to all previous paragraphs set forth above as though reinstated herein.

36.     Marine Credit, directly, and through its agents, as described above, discriminated against Tolliver because of his race, in violation of Wis. Stat. §§ 111.321, 111.322, and 111.325.

**ANSWER**:  Defendant denies the allegations in Paragraph 36 of the Complaint.

37.     Marine Credit, directly, and through its agents, as described above, discriminated against Tolliver because he complained of these discriminatory practices, in violation of Wis. Stat. §111.322 (3).

**ANSWER**:  Defendant denies the allegations in Paragraph 37 of the Complaint.

38.     Tolliver has suffered great physical and emotional pain and suffering, lost wages and other employment benefits, attorney's fees and costs, and other damages that he will establish at trial.

**ANSWER**:  Defendant denies the allegations in Paragraph 38 of the Complaint.

## RELIEF

Defendant denies any allegations in the Complaint not specifically addressed above. Defendant further denies that Plaintiff is entitled to any of Paragraphs a. through f. of the requested Relief, or to any other relief or damages whatsoever.

## STATEMENT OF DEFENSES

Defendant asserts the following defenses without assuming any burdens of production or proof that it would not otherwise have. Defendant further avers that Plaintiff's claims are so vague as to render it impossible to identify every defense, and thus expressly reserves its right to assert additional defenses should the precise nature of Plaintiff's claims become clear.

1.      Consideration of Plaintiff's claims is precluded because the issues raised in this Complaint previously have been decided by, and/or are currently pending before a state tribunal.

2.      Any injuries suffered by Plaintiff were caused by his/her own conduct and/or consent to the conduct set forth in the Complaint.

3.      Plaintiff's claims, or some of them, are, or may be, barred by the same actor and/or the same decision-maker defense.

4.      Plaintiff's claims are not actionable because the challenged employment practices are justified by legitimate, non-discriminatory, non-retaliatory, and non-pretextual business reasons unrelated to Plaintiff's race and/or color.

5.      At all times, Defendant's actions were lawful, justified, and made in good faith.

6.      Defendant has in place a clear, effective, and well-disseminated policy against discrimination and a reasonable and available procedure for handling complaints thereof, which provides for prompt and effective responsive action. Plaintiff's claims are barred because Plaintiff

unreasonably failed to use the preventive and corrective measures that Defendant provided and reasonable use of Defendant's procedures would have prevented at least some of the harm that Plaintiff allegedly suffered.

7.      To the extent it is alleged that the employer applied different standards of compensation, or different terms, conditions or privileges of employment based on race or color, Defendant did so because employees work in different locations and, thus, this practice cannot be found to be an unlawful employment practice.

8.      To the extent Plaintiff proves that his race or color was a substantial motivating factor in any employment decision or action affecting him, Defendant will show that the same decision would have been reached regardless of Plaintiff's protected characteristic, which will restrict the Plaintiff's recovery under Title VII as specified by 42 U.S.C. § 2000e-5(g)(2)(B).

9.      If any improper, illegal, or discriminatory act was taken by any Defendant employee against Plaintiff, it was outside the course and scope of that employee's employment, contrary to Defendant's policies, and was not ratified, confirmed, or approved by Defendant. Thus, any such actions cannot be attributed or imputed to Defendant.

10.     Plaintiff is not entitled to a back pay award because Plaintiff has suffered no economic damage.

11.     Plaintiff has received interim earnings that must be deducted from any back pay award.

12.     Plaintiff is barred from recovering damages to the extent he has failed to mitigate his damages, including the failure of Plaintiff to accept work or to exercise diligence in seeking employment.

13.     To the extent Plaintiff has accepted other employment and has been discharged for good cause from such employment, Plaintiff is barred from receiving equitable remedies including reinstatement to employment and recovery of back pay.

14.     The allegations of Plaintiff's Complaint are insufficient to entitle him to punitive damages.

15.     Any imposition of punitive damages in this case would contravene Defendant's constitutional right to substantive and procedural due process of law under the Fifth Amendment of the Constitution of the United States.

16.     Defendant employed more than 201 employees but fewer than 501 employees during each of 20 or more calendar weeks in the current or preceding calendar year. Hence, under 42 U.S.C. § 1981a, any award of compensatory and punitive damages, if proved, may not exceed $200,000.

17.     Defendant is entitled to recovery of its attorneys' fees (including any expert fees) pursuant to 42 U.S.C. § 2000e-5(k).

18.     The Complaint sets forth claims that are frivolous, unreasonable, or without foundation, thus entitling Defendant to recover its attorney's fees associated with defending against such claims.

Dated this 23rd day of July, 2019.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

s/Keith E. Kopplin
Keith E. Kopplin
WI State Bar No. 1044861
1243 North 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: 414.239.6406
Facsimile: 414.755.8289
keith.kopplin@ogletree.com

**ATTORNEYS FOR DEFENDANT
MARINE CREDIT UNION**

39379787.1

15